UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TADEUSZ CHMIEL and HALINA CHMIEL,

                                    Plaintiffs,

        v.

BMI REALTY, LLC a/k/a BMI REALTY CO.
a/k/a PERLE MANAGEMENT, THOR
EQUITIES LLC and THOR MANAGEMENT
COMPANY RN LLC,

                                    Defendants.

Case No.: 1:16-cv-01482-RJS

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## BMI REALTY, LLC's MOTION TO DISMISS

---

OLSHAN FROME WOLOSKY LLP
Aliza F. Herzberg, Esq.
Matteo J. Rosselli, Esq.
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

*Attorneys for Defendant*
  *BMI Realty, LLC a/k/a BMI Realty Co.*
  *a/k/a Perle Management*

October 7, 2016

Table of Contents

Page

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

    Parties ..............................................................................................................................2

    Plaintiffs' Alleged Employment ....................................................................................3

PROCEDURAL HISTORY ...........................................................................................................3

    Plaintiffs' First Complaint .............................................................................................3

    Plaintiffs' First Amended Complaint ............................................................................4

    Plaintiffs' Second Amended Complaint ........................................................................4

STANDARD OF REVIEW ..........................................................................................................6

ARGUMENT .................................................................................................................................6

    I .    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNPAID WAGES
         UNDER FLSA  OR NEW YORK LABOR LAW ...........................................6

    II .    NEW YORK PROVIDES NO PRIVATE RIGHT OF ACTION FOR
         FAILURE TO  PROVIDE ANNUAL NOTICES .................................................13

    III .    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL
         JURISDICITON  OVER PLAINTIFFS' WAGE STATEMENT CLAIM ..........15

CONCLUSION...............................................................................................................................16

Table of Authorities

Page

**CASES**

*Amponin v. Olayan America Corp.*,
  No. 14 Civ. 2008(TPG), 2015 WL 1190080 (S.D.N.Y. March 16, 2015) ...........................7, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................6

*Bustillos v. Academy Bus, LLC*,
  No. 13 Civ. 565(AJN), 2014 WL 116012 (S.D.N.Y. Jan. 13, 2014).................................9, 12

*Carnegie–Mellon University v. Cohill*,
  484 U.S. 343 (1988)................................................................................................15

*Chechele v. Scheetz*,
  819 F. Supp. 2d 342 (S.D.N.Y. 2011)............................................................................1

*Cromwell v. New York City Health and Hosp. Corp.*,
  No. 12 Civ. 4251(PAE), 2013 WL 2099251 (S.D.N.Y. May 15, 2013).....................10, 11, 12

*Dejesus v. HF Management Services, LLC*,
  726 F.3d 85 (2d Cir. Aug. 5, 2013)................................................................... *passim*

*Gisomme v. HealthEx Corp.*,
  No. CV 13-2541(LDW)(WDW), 2014 WL 2041824 (E.D.N.Y. May 15, 2014)...................10

*Gold v. New York Life Insurance Co.*,
  730 F.3d 137 (2d Cir. 2013)......................................................................................14

*Guan Ming Lin v. Benihana Corp.*,
  No. 10 Civ. 1335(RA)(JCF), 2012 WL 7620734 (S.D.N.Y. Oct. 23, 2012) ..........................14

*Johnson v. Equinox Holdings, Inc.*,
  No. 13 Civ. 6313(RMB), 2014 WL 3058438 (S.D.N.Y. July 2, 2014)..................................10

*Koljenovic v. Marx*,
  999 F Supp.2d 396 (E.D.N.Y. 2014) ............................................................................7

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
  711 F.3d 106 (2d Cir. 2013)............................................................................ *passim*

Table of Authorities
(*cont'd*)

Page

*Marcus v. AT&T Corp.*,
　138 F.3d 46 (2d Cir. 1998)................................................................16

*Nakahata v. New York–Presbyterian Healthcare System, Inc.*,
　723 F.3d 192 (2d Cir. July 13, 2013)...........................................7, 8, 11

*Perkins v. 199 SEIU United Healthcare Workers East*,
　73 F. Supp.3d 278 (S.D.N.Y. 2014) (Engelmayer, J.)..............................9

*Pruell v. Caritas Christi*,
　678 F.3d 10 (1st Cir. 2012).................................................................8

*Serrano v. I Hardware Dist., Inc.*,
　No. 14-cv-2488(PAC), 2015 WL 4528170 (S.D.N.Y. July 27, 2015) ....................9

*Spiteri v. Russo*,
　No. 12-CV-2780(MKB)(RLM), 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) ..................10

*Valencia ex rel. Franco v. Lee*,
　316 F.3d 299 (2d Cir. 2003)...............................................................16

*Yuquileman v. Manhattan's Hero Corp.*,
　No. 13-CV-461(WHP)(JLC), 2014 WL 4207106 (S.D.N.Y. Aug., 26, 2014)......................14

STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1367.................................................................................16

Federal Rule of Civil Procedure 12(b)(6) ........................................................6

Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*....................................*passim*

New York Labor Law § 650 et. seq..............................................................*passim*

New York Wage Theft Prevention Act, L. 2010, c. 564, § 3,
　N.Y. Labor Law § 195 ............................................................12, 13, 15

Defendant BMI Realty, LLC ("BMI"), by and through its attorneys, Olshan Frome Wolosky LLP, respectfully submits this memorandum of law in support of its motion to dismiss.

## PRELIMINARY STATEMENT

Plaintiffs Tadeusz Chmiel and Halina Chmiel are a husband and wife who allege that they lived and worked as building superintendents for twenty-seven (27) years at a 44-unit residential apartment building in the Upper West Side owned and operated by BMI (the "Apartment Building").[1]

Mr. Chmiel, who also worked as a full-time schoolteacher for the New York Department of Education, claims that he worked overtime hours for which he was not compensated. Specifically, the Second Amended Complaint alleges that Mr. Chmiel "would, in a ***typical*** work week, work for about one hour in the morning before going to his teaching job, and then work from 4 PM until 11 PM.  On weekends, he would ***typically*** work 5-10 hours.  Thus, his ***typical*** workweek was 45-50 hours."  (Emphasis added.)  These allegations are insufficient under recent Second Circuit caselaw, most notably *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013), under which a plaintiff must set forth the number of hours worked in a particular given workweek and cannot instead allege more generally that they "typically," "regularly," or "on average" worked some schedule.  The need for specificity required by *Lundy* is underscored in this action, where Mr. Chmiel has offered successive complaints setting forth completely different "typical" workweeks.  Given his failure to set forth a claim in accordance with *Lundy*, Mr. Chmiel's wage and overtime claims should be dismissed with prejudice.

---

[1] The allegations in the Complaint are presumed to be true only for purposes of the instant motion.  *See Chechele v. Scheetz*, 819 F. Supp. 2d 342, 346 (S.D.N.Y. 2011).  BMI does not, however, admit the truth of such allegations.  In particular, BMI vehemently disputes that it ever employed Mrs. Chmiel and respectfully submits that the duties of a superintendent at a 44-unit residential building could not plausibly approach the astonishing totals claimed by Plaintiffs.

Mrs. Chmiel, who BMI vehemently disputes ever having employed in any capacity, alleges that she worked "***typically*** from 7:30 AM to 3:30 PM Monday through Friday" and that she was never compensated over 27 years for such work, which "***typically*** took her ***about*** 40 hours per week. . ." (SAC ¶¶ 14, 20.)  These generic claims likewise fail under *Lundy*.

BMI also moves to dismiss Plaintiff's Third Cause of Action for Defendants' alleged failure to provide annual statements, since the New York Labor Law never provided a private right of action for such claims.

## STATEMENT OF FACTS

Unless otherwise noted, the facts below are taken from Plaintiffs' Second Amended Complaint (ECF Dkt. No. 31 ("SAC")).

### Parties

Plaintiffs Tadeusz Chmiel and Halina Chmiel ("Plaintiffs") are a husband and wife who, for twenty-seven (27) years, allegedly lived and worked at 526 West 111th Street in the Upper West Side.  (SAC ¶¶ 6, 10.)

Defendant BMI Realty, LLC ("BMI") is a New York limited liability company that owned and managed the Apartment Building until on or about October 2015.  (SAC ¶¶ 9–11.)

Defendants Thor Equities, LLC and Thor Management Company RN LLC[2] (the "Thor Entities") are Delaware limited liability companies that purchased the building on or about October 2015 and allegedly "continued BMI's operations at those premises, with the same workplace, the same tenants, and . . . the same workforce."  (SAC ¶¶ 11–12, 26.)  The Thor entities are not sued directly, but only as "BMI's [alleged] successors in interest."  (SAC ¶ 1.)

---

[2] Plaintiffs' caption indicates Thor Management RN *LLC* as a defendant, whereas Paragraph 12 of the Second Amended Complaint instead refers to Thor Management RN *Inc.*  (SAC ¶ 12.) Counsel has been unable to locate the latter entity on the website of the New York Department of State and presumes the reference to "Inc." to be a mistaken reference to "LLC".

Plaintiffs' Alleged Employment

Plaintiffs are a husband and wife who allege that they both worked as live-in building superintendents at the 44-unit Apartment Building. (SAC ¶ 1.) Mr. Chmiel, who was also a full-time schoolteacher for the New York Department City Department of Education, alleges that his job duties as superintendent included "collecting and taking out garbage and recycling, making apartment repairs including minor plumbing, flooring, roofing, and electrical work, maintaining building boilers, checking hallways for cleanliness and maintenance issues, cleaning inside and outside the buildings, and responding to resident complaints and concerns, including lock-outs." (SAC ¶ 13.) While Mr. Chmiel taught during daytime hours, Mrs. Chmiel was allegedly required to remain at the apartment building "to respond to tenant complaints or concerns, to provide access to the building [and supervise] any plumbers, mechanics, utility and cable television workers, and any other workers for the building during the day" and "to accept oil deliveries." (SAC ¶ 14.) Plaintiffs allege that they were on call 24 hours a day, 7 days per week." (SAC ¶ 16.) As set forth below, Plaintiffs allege that Mr. Chmiel was not paid for overtime and that Mrs. Chmiel was not paid at all over 27 years. (SAC ¶¶ 29–40.)

## PROCEDURAL HISTORY

Plaintiffs' First Complaint

Plaintiffs commenced this action on February 25, 2016 with the filing of the initial Complaint. (ECF Dkt. No. 1 ("Compl.").) The initial Complaint contained wage-and-hour claims, based on the barebones allegation that "[b]oth Plaintiffs regularly worked in excess of 40 hours per week but were not paid overtime premiums." (Compl. ¶ 10.)

In response to proposed motions to dismiss the initial Complaint for failure to state a claim, Plaintiff requested and was granted leave to file the Amended Complaint to address pleading deficiencies. (*See* ECF Dkt. No. 15.)

3

Plaintiffs' First Amended Complaint

Plaintiffs filed the First Amended Complaint on June 6, 2016.  (ECF Dkt. No. 16 ("First Am. Compl.")).  The First Amended Complaint alleged that Mr. Chmiel "would typically work approximately 1½ hours in the morning and an additional approximately 7½ hours in the afternoon and evening" and "an additional 12 hours on Saturday and occasionally on Sundays, for total weekly hours of approximately 57."  (First Am. Compl. ¶ 10.)  The First Amended Complaint elaborated that "[f]or approximately 4 months out of the year"—presumably when school was on recess—"Mr. Chmiel typically worked approximately 16 hours a day Monday through Saturday, for a total of 96 hours per week."  (*Id.*)  The First Amended Complaint further alleged that "Mrs. Chmiel typically worked Monday through Friday from approximately 7am to 3:30pm or approximately 40 hours per week."  (*Id.*)

In response to defense counsels' renewed proposed motions to dismiss the First Amended Complaint, Plaintiffs' counsel indicated at the pre-motion conference on June 30, 2016 his intention to file a Second Amended Complaint.  (*See* June 30, 2016 Minute Entry.)  One week later, Plaintiffs' counsel moved, and was later granted leave, to withdraw.  (See Dkt. Nos. 22–25.)

Plaintiffs' Second Amended Complaint

Plaintiffs filed the Second Amended Complaint on September 2, 2016.  (ECF Dkt. No. 31 ("SAC").)  This time, Plaintiffs alleged that Mr. Chmiel "would, ***in a typical work week***, work for about one hour in the morning before going to his teaching job, and then work from 4 PM until 11 PM. On weekends, he would ***typically work*** 5-10 hours.  Thus, his ***typical workweek*** was 45-50 hours."  (SAC ¶ 19 (emphasis added).)  The Second Amended Complaint alleges that Mrs. Chmiel "would work while [Mr.] Chmiel was working his other job as a schoolteacher, ***typically*** from 7:30 AM to 3:30 PM Monday through Friday" and her "duties typically took her about 40 hours per week, including on-call time."  (SAC ¶ 20 (emphasis added).)

4

The Second Amended Complaint contains six Causes of Action:

In the First Cause of Action, Plaintiffs allege that BMI failed to pay them "the minimum wage for each hour worked . . . in violation of the FLSA, 29 U.S.C. § 206(a)(1)" and that such alleged failure was "willful within the meaning of the FLSA, 29 U.S.C. § 255."  (SAC §§ 34–35.)

In the Second Cause of Action, Mr. Chmiel alleges that BMI failed to pay him "overtime compensation at a rate not less than one and one-half time the regular rate of pay for each hour worked in excess of 40 per week, in violation of the FLSA, 29 U.S.C. § 207(a)(1)" and that such alleged failure was "willful with the meaning of the FLSA, 29 U.S.C. § 255."  (SAC §§ 38–39.)

In the Third Cause of Action, Plaintiffs allege that "BMI consistently and willfully failed to provide them with adequate annual notices as required by New York law."  (SAC § 45.)

In the Fourth Cause of Action, Plaintiffs allege that "BMI consistently and willfully failed to provide them with adequate wage statements as required by New York law."  (SAC § 51.)

In the Fifth Cause of Action, incorrectly labeled "Fourth Cause of Action: FLSA Minimum Wage," Plaintiffs allege that BMI failed "to pay them the minimum wage for each hour worked in each discrete work week, in violation of the NYLL and supporting regulations" and that such alleged failure "was willful within the meaning of the NYLL."  (SAC §§ 55–56.)

In the Sixth Cause of Action, incorrectly labeled "Fifth Cause of Action," Mr. Chmiel alleges that BMI failed to pay him "overtime compensation at a rate not less than one and one-half the regular rate of pay for each hour worked in excess of 40 per week" and that such alleged failure was "willful."  (SAC §§ 59–60.)

On September 19, 2016, BMI and the Thor Entities indicated their intention to renew their motions to dismiss.  (ECF Dkt. Nos. 32–33.)  On September 26, 2016, this Court issued an Order permitting defendants to file their contemplated motions to dismiss.  (ECF Dkt. No. 35.)

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted where the pleading fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 770 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNPAID WAGES UNDER FLSA OR NEW YORK LABOR LAW

Mr. Chmiel has brought minimum wage and overtime claims in the Second Amended Complaint based upon allegations that he was paid $426 per week and that such wages were allegedly insufficient because "his typical workweek was 45-50 hours."  (SAC ¶ 19.)  Mrs. Chmiel alleges that she was not compensated at all for work that "typically took her about 40 hours per week."  (SAC ¶ 20.)  Under the Second Circuit's decision in *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013), dismissal of these claims is warranted due to Plaintiffs' failure to state the number of hours that they allegedly worked in any given workweek.  Moreover, given the contradictory successive pleadings regarding what constituted Mr. Chmiel's supposed "typical" workweek, Plaintiffs should not be given yet another opportunity to amend their deficient pleading.

The Fair Labor Standards Act of 1938, 29 U.S.C. § 201 ("FLSA") establishes that an employer must pay employees a minimum wage as well as overtime wages, at a rate one and one-

half (1½) times an employee's normal hourly rate for any hours worked in excess of forty hours in a single week.  *See* 29 U.S.C. §§ 206, 207.  FLSA further provides a private right of action to aggrieved employees who were not paid the minimum wage or overtime.  *See* 28 U.S.C. § 216(b). The New York Labor Law provides analogous claims that are analyzed under the same legal standards.  *See Lundy*, 711 F.3d at 110 ("We also affirm the dismissal of Plaintiffs' NYLL overtime claims, which have the same deficiencies as the FLSA claims. . . ."); *Amponin v. Olayan America Corp.*, No. 14 Civ. 2008(TPG), 2015 WL 1190080, at *4 (S.D.N.Y. March 16, 2015) ("The same pleading requirements for plaintiffs FLSA claim apply to her claim under NYLL.").[3]

The Second Circuit published three decisions in 2013 clarifying the pleading requirements on a claim for unpaid wages.  *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. Aug. 5, 2013); *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. July 13, 2013); *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. March 1, 2013).

In *Lundy*, the first of the three decisions, the Second Circuit affirmed the dismissal of overtime claims premised on allegations that the plaintiffs "***typically***" worked *x* hours per week and "***occasionally***" worked *x* hours more per week.  711 F.3d at 114.  The Second Circuit held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work ***in a given workweek*** as well as some uncompensated time in excess of the 40 hours."  *Id.*  (emphasis added).  The Court elaborated that ""[d]etermining whether a plausible claim has been plead is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Applying this standard, the Second Circuit found "no plausible claim that FLSA was violated, because

---

[3] Mr. Chmiel is furthermore exempt from overtime pay under the New York Labor Law.  *See Koljenovic v. Marx*, 999 F Supp.2d 396, 399–400 (E.D.N.Y. 2014) (live-in residential superintendent exempt from overtime pay pursuant to 12 N.Y.C.C.R.R. tit. 12, 141 *et seq*.).

[p]laintiffs ha[d] ***not alleged a single workweek*** in which they worked at least 40 hours. . . ." *Id.* (emphasis added).

In *Nakahata*, the Second Circuit affirmed the district court's dismissal of a FLSA overtime claim where the plaintiffs "allege[d] broadly" that they "regularly worked hours both under and in excess of forty per week and were not paid for all of those hours." 723 F.3d at 199. Applying *Lundy*, the Second Circuit held that "[t]o plead a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.* at 201. In light of the rule it set forth, the Court affirmed the district court's dismissal of the plaintiffs' FLSA overtime claims, explaining the plaintiffs "failed to plead sufficient facts to make it plausible that they worked uncompensated hours in excess of 40 in a given week." *Id.*

In *Dejesus*, the Second Circuit's most recent pronouncement on the applicable pleading standard in wage-and-hour cases, the Court affirmed the dismissal of an overtime claim where the plaintiff alleged that she had "worked more than forty hours per week during 'some or all weeks' of her employment." 726 F.3d at 86. In holding that such allegations did not suffice, the Second Circuit noted that the plaintiff "did not estimate her hours in any or all weeks or provide any other factual context or content" and did nothing "more than repeat the language of the statute." *Id.* at 89. *Dejesus* contains an approving discussion of the First Circuit's decision in *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012), wherein "plaintiffs had alleged that they 'regularly worked' more than forty hours a week and were not properly compensated." *Id.* at 89. Consistent with *Lundy*, the First Circuit found that the plaintiffs' "regularly worked" allegation was "so threadbare or speculative that [it] fail[ed] to cross the line between the conclusory and the factual." *Id. Dejesus* finds that "[t]he First Circuit's reasoning is persuasive." *Id.*

8

In rejecting the threadbare allegations in *Dejesus*, Judge Sack further took note of "the possible use by lawyers representing plaintiffs in such cases of standardized, barebones complaints against any number of possible defendants about whom they have little or no evidence of FLSA violations for the purpose of . . . engag[ing] in 'fishing expeditions.'" *Id.* at 86.[4]  Given that it should be "employees' memory and experience that lead them to claim in federal court that they have been denied overtime," it is only fair that "plaintiffs draw on those resources in providing complaints with sufficiently developed factual allegations." *Id.* at 90.

In the wake of *Lundy*, *Nakahata*, and *DeJesus,* District Courts in this Circuit have not hesitated to dismiss vaguely pleaded overtime claims under FLSA and the New York Labor Law. *See, e.g., Amponin v. Olayan America Corp.*, No. 14 Civ. 2008(TPG), 2015 WL 1190080, at *3 (S.D.N.Y. March 16, 2015) (Griesa, J.) ("[P]laintiff's allegations identify neither a specific week during which she worked more than forty hours, nor the specific number of hours she worked during any such week. Without such key information, the court can only speculate as to whether plaintiff worked more than 40 hours in any particular week without receiving overtime pay."); *Serrano v. I Hardware Dist., Inc.*, No. 14-cv-2488(PAC), 2015 WL 4528170, at *4 (S.D.N.Y. July 27, 2015) (Crotty, J.) (dismissing claim based on allegation plaintiffs "worked 'an average' of 62 and 60 hours per week, respectively" since plaintiffs "not allege that they worked more than 40 hours in a 'given' work week"); *Bustillos v. Academy Bus, LLC*, No. 13 Civ. 565(AJN), 2014 WL 116012, at *3 (S.D.N.Y. Jan. 13, 2014) (Nathan, J.) (dismissing claim based on allegation that plaintiff's "schedule 'varied' and he 'would regularly work from 60 to 90 hours per week'"); *Perkins v. 199 SEIU United Healthcare Workers East*, 73 F. Supp.3d 278, 290 (S.D.N.Y. 2014)

---

[4] The Second Circuit's concern regarding standardized, barebones complaints is particularly apt in this case, where the Second Amended Complaint contains allegations apparently taken from a class action complaint, and thus references "Class Members" (SAC ¶¶ 43, 46) and an alleged "widespread pattern and practice" (SAC ¶¶ 30, 54).

(Engelmayer, J.) ("Without more detailed factual content—including identifying any specific week or time period in which [plaintiff] worked overtime but was not lawfully paid for it—the Amended Complaint cannot 'cross the line from conceivable to plausible.'"); *Johnson v. Equinox Holdings, Inc.*, No. 13 Civ. 6313(RMB), 2014 WL 3058438 (S.D.N.Y. July 2, 2014) (Berman, J.) ("allegations, which identify neither the weeks during which [plaintiff] worked more than forty hours nor the specific numbers of hours he worked during such weeks" fail to state a claim); *Gisomme v. HealthEx Corp.*, No. CV 13-2541(LDW)(WDW), 2014 WL 2041824, at *2 (E.D.N.Y. May 15, 2014) ("Plaintiffs allegation of an 'average' of 50 hours or more is insufficient to state a claim for failure to pay overtime compensation 'in a given workweek.'"); *Spiteri v. Russo*, No. 12-CV-2780(MKB)(RLM), 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) (finding that plaintiff's allegation that "[d]uring the time relevant herein, Plaintiff worked approximately fifty (50) to (60) hours per week" and estimation of the aggregate number of hours worked did not plausibly "plead the hours he worked with the specificity required by the Second Circuit"); *Cromwell v. New York City Health and Hosp. Corp.*, No. 12 Civ. 4251(PAE), 2013 WL 2099251, at *4 (S.D.N.Y. May 15, 2013) (Engelmayer, J.) (same).

For example, in *Cromwell*, the plaintiff "estimate[d] that he worked an additional approximately 6 hours and 40 minutes per week for which he was not compensated by the defendants." 2013 WL 2099252, at *2. The plaintiff had come to that conclusion by alleging that he "was '***typically***' scheduled for five shifts per week and worked an extra shift 'approximately twice a month.'" *Id.* at *4 (emphasis added). Judge Engelmayer dismissed this claim as indistinguishable from the claim rejected by the Second Circuit in *Lundy*: "Measured alongside the allegations in *Lundy*, it is clear that Cromwell's factual allegations suffer from the same lack of specificity. . . . The Amended Complaint does not [] alleged precisely when, or at what point

during, his 21 years of employment, [plaintiff] worked more than 40 hours." *Id.* In dismissing the Amended Complaint, the court elaborated that "[t]he estimate and approximations here invite the same sort of speculation that the Second Circuit held 'does not amount to a plausible claim under FLSA'" in *Lundy*. *Id.*

As in *Lundy* and *Cromwell*, Plaintiffs' claims should be dismissed in this case. While the Second Amended Complaint contains more detail than Plaintiffs' prior complaints, the pertinent allegations remain vague in the extreme, providing only that Mr. Chmiel would, "in a **typical** work week, work for about one hour in the morning before going to his teaching job, and then work from 4 PM until 11 PM. On weekends, he would **typically** work 5-10 hours. Thus, his **typical** workweek was 45-50 hours." (SAC ¶ 19 (emphasis added).) The Second Amended Complaint similarly asserts only that Mrs. Chmiel "would work . . . typically form 7:30 AM to 3:30 PM Monday through Friday" and that such "duties typically took her about 40 hours per week." (SAC ¶ 14, 20 (emphasis added).)

Plaintiffs allegations are so open-ended that they fail to provide adequate notice of the number of hours worked by Plaintiffs "in a given workweek" or to give a concrete approximation of the extent of the wage-and-hour violations alleged. *Cf. Lundy, Inc.*, 711 F.3d at 114–15 (emphasizing this point using several different phrasings: "a given workweek"; "a single workweek"; a "particular week"); *DeJesus*, 726 F.3d at 90 (noting that the plaintiff must allege "overtime in a 'given' workweek" under *Lundy*); *Nakahata*, 723 F.3d at 201 (allegations must "support a reasonable inference that they worked more than forty hours in a given week"). As in *Cromwell*, the Second Amended Complaint does not allege "precisely when, or at what point during, his [27] years of employment, [Mr. Chmiel] worked more than 40 hours." *See Cromwell*,

2013 WL 2099252, at *2; *see also Bustillos*, 2014 WL 116012, at *4 (rejecting "conclusory allegation as to the number of hours 'routinely' worked").

Adherence to Second Circuit precedent requiring a statement of hours in a given workweek is particularly warranted here given that Plaintiff has offered contradictory allegations regarding Mr. Chmiel's "typical" workweek in successive pleadings.  Thus, the First Amended Complaint alleged that Mr. Chmiel typically worked approximately 9 hours on weekdays "and 12 hours on Saturday and occasionally on Sunday, for ***total weekly hours of approximately 57***." (First Am. Compl. ¶ 10 (emphasis added).)  Now, in his Second Amended Complaint, Mr. Chmiel alleges that he typically worked 8 hours on weekdays and 5-10 hours on weekends; thus, now Mr. Chmiel alleges "***his typical workweek was 45-50 hours***."  (SAC ¶ 19 (emphasis added).)  In the Second Amended Complaint, Plaintiffs further alleged that "[f]or approximately 4 months out of the year, Mr. Chmiel typically worked approximately 16 hours a day . . . for a total of 96 hours per week."  (First Am. Compl. ¶ 10.)  The Second Amended Complaint now apparently alleges that Mr. Chmiel had a single typical workweek, thus eliminating the fanciful claim that Mr. Chmiel worked ninety-six (96) hour workweeks for four months out of the year.

Setting aside the blatant contradictions in successive pleadings—which leave defendants to only guess as to what is being claimed—Plaintiffs' third attempt at a complaint still fails to set forth their hours in any given workweek and does nothing more to nudge their claims from the conceivable to plausible.  Plaintiffs cannot shirk the Second Circuit's mandate that they use their "memory and experience to provide the court with sufficiently developed factual allegations." *DeJesus*, 726 F.3d at 90.  Accordingly, since the Second Amended Complaint fails to specify the number of hours Plaintiffs worked in any given workweek, as set forth in *Lundy*, their wage and overtime claims under FLSA and NYLL must be dismissed with prejudice.

12

II.   **NEW YORK PROVIDES NO PRIVATE RIGHT OF ACTION FOR FAILURE TO PROVIDE ANNUAL NOTICES**

Plaintiff's Third Cause of Action seeks $5,000 per plaintiff for BMI's alleged failure to provide annual notices pursuant to New York Labor Law § 195.  In support, Plaintiffs allege that "[d]uring the course of [their] employment, Defendant BMI consistently and willfully failed to provide them with adequate annual notice."  (SAC ¶ 44.)  This claim must be dismissed because the applicable statutory provision—enacted in 2011 and repealed altogether in 2014—never provided for a private right of action and, instead, entrusted enforcement solely to the discretion of the New York State Department of Labor ("NY DOL").

The Wage Theft Prevention Act, L. 2010, c. 564, § 3, N.Y. Labor Law § 195 (the "WTPA") was an amendment to the New York Labor Law, effective as April 9, 2011, that, amongst other things, required employers to provide their employees with a specified notice "at the time of hiring, and on or before February first of each subsequent year of the employee's employment."  N.Y. Labor Law § 195  (2010).  The WTPA created a private right of action against employers who failed to provide such a wage notice *at the time of hiring*.  *See* N.Y. Labor Law § 198(1-b) ("If any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section one hundred ninety-five of this article, he or she may recover in a civil action damages. . . .").  In contrast, the very next paragraph of the same statutory provision contained broader language authorizing the NY DOL to bring a governmental action for violations of N.Y. Labor Law § 195 *without limitation to the time of hiring*. N.Y. Labor Law § 198(1-b) ("On behalf of any employee not provided a notice as required by subdivision one of section one hundred ninety-five of this article, the commissioner may bring any legal action.").

Under the version of N.Y. Labor Law § 198(1-b) in place until February 26, 2015, a plaintiff could recover $50 for each work week and up to $2,500 for the employer's failure to provide an initial notice at the time of hiring. *See* N.Y. Labor Law § 198(1-b) (2011).[5]

The WTPA was amended, as of December 29, 2014, to retain the requirement of a written notice to employees at the time of hiring, but to eliminate the requirement that employers provide subsequent annual notices to their employees. *See* N.Y. Labor Law § 195 (2014). Thus, New York Labor Law now neither requires that annual notices be provided to employees, nor authorizes a private right of action for the failure of employers to have provided such notices during the three years (2012–2014) when New York Labor Law § 195 required them.

Courts in this District have read the WTPA's plain language to find that New York's legislature never intended to create a private right of action for an employee who did not receive an annual notice. As explained by Judge Francis, "[t]he plain language of the [repealed] statute . . . confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it [for each] subsequent year. . . . In contrast, the provision giving the Commissioner of Labor the power to bring an action does not contain any limitations. Therefore, the proper interpretation of NYLL § 198(1–b) is that only employees who did not receive a proper wage and hour notice at the time of hiring can sue. . . ." *Guan Ming Lin v. Benihana Corp.*, No. 10 Civ. 1335(RA)(JCF), 2012 WL 7620734 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted in full*, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) (Abrams, J.); *Yuquileman v. Manhattan's Hero Corp.*, No. 13-CV-461(WHP)(JLC), 2014 WL 4207106

---

[5] Notably here, Plaintiffs attempt to rely upon the enhanced statutory penalty of $50 per day and up to $5,000 that was put into place in 2015, *after* the annual notice requirement had already been eliminated by New York's legislature. N.Y. Labor Law § 198(1-b) (2015). Plaintiffs' proposed retroactive application of the penalty provision would be utterly inconsistent with the intent of the legislature in eliminating the annual notice requirement altogether. *See Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 143–44 (2d Cir. 2013) (noting the "strong presumption against retroactivity" in the context of the penalty provisions of New York Labor Law).

(S.D.N.Y. Aug., 26, 2014) (Cott, J.) (same), *report and recommendation adopted in full*, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) (Pauley, J.).

This plain reading of the WTPA is wholly consistent with the legislature's subsequent decision in 2014 to maintain the requirement of a written notice to employees at the time of hiring, while repealing the requirement for subsequent annual notices.  In both instances, the legislature viewed the initial notice requirement to be a more integral part of the statutory scheme. This legislative intent is evident in the decision to make the initial notice requirement subject to a private enforcement mechanism, while leaving enforcement of the annual notice requirement— which was later repealed altogether in light of continued concerns of onerousness and uselessness from the business community[6]—solely to the discretion of the NY DOL.

Because New York Labor Law never created a private right of action for the failure to provide annual notices, Plaintiffs' Third Cause of Action must be dismissed.

## III.   THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICITON OVER PLAINTIFFS' WAGE STATEMENT CLAIM

Plaintiffs' Fourth Cause Action seeks damages of "$5,000 per employee" for BMI's alleged failure to provide wage statements in accordance with New York Labor Law § 195(3). Should the Court dismiss the remainder of Plaintiffs' federal claims, BMI respectfully requests that the Court decline to exercise continued supplemental jurisdiction over Plaintiffs' Fourth Cause of Action for BMI's alleged failure to provide wage statements.

---

[6] "The new law repeals the 2011 amendment to the WTPA that required employers to provide annual wage notices and to obtain employee acknowledgements yearly between January 1 and February 1, thus removing an onerous administrative requirement for employers.  Private-sector employers had raised significant concerns about a notice that many believe provides no meaningful benefit to employees."  Bruce Millman, Steven Fuchs and Jill Lower, *Key Changes to New York's Wage Theft Prevention Act Become Law* (Dec. 31, 2014), *available a*t https://www.littler.com/key-changes-new-yorks-wage-theft-prevention-act-become-law

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367, which provides, in pertinent part, that "district courts may decline to exercise supplemental jurisdiction over a claim [] if . . . the district court has dismissal all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 349–50 (1988)); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

There is no reason to depart from the ordinary rule here in order to retain supplemental jurisdiction over Plaintiffs' Fourth Cause of Action.  Therefore, Plaintiff's Fourth Cause of Action should likewise be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant BMI Realty, LLC respectfully requests that the Court enter an order granting its motion to dismiss.

Dated: New York, New York
       October 7, 2016

OLSHAN FROME WOLOSKY LLP


By:   /s/ *Matteo J. Rosselli*
      Aliza F. Herzberg, Esq.
      Matteo J. Rosselli, Esq.
      *Attorneys for Defendant BMI Realty, LLC*
      1325 Avenue of the Americas
      New York, New York 10019
      (212) 451-2300
      mrosselli@olshanlaw.com